IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

SPYDERCO, INC.,
a Colorado corporation,

      Plaintiff,

v.

MAMBATE USA INC.,
a New York corporation D/B/A AGPTEK, and
BRAINYTRADE USA INC. D/B/A
BRAINYDEAL,
a New Jersey corporation,

      Defendants.

---

## COMPLAINT WITH JURY DEMAND

---

      Plaintiff Spyderco, Inc. ("Spyderco") files this Complaint against Defendants Mambate USA Inc. d/b/a AGPtek ("Mambate") and BrainyTrade USA Inc. d/b/a BrainyDeal ("BrainyTrade"), alleging as follows:

### I.     THE PARTIES

      1.     Spyderco is a Colorado corporation, having its principal place of business at 820 Spyderco Way, Golden, Colorado 80403.

      2.     Upon information and belief, Mambate is incorporated under the laws of the State of New York, with a principal place of business at 7708 18th Avenue, Brooklyn, New York 11214.  Upon information and belief, AGPtek is an assumed business name of Mambate. Mambate owns both special form and standard character U.S. Trademark Registrations for

"AGPTEK," both covering electronic goods.  Mambate may be served via its registered agent for service of process: Ling Ma, 18 Bucknell Dr., East Brunswick, New Jersey 08816.

3.      Upon information and belief, BrainyTrade is incorporated under the laws of the State of New Jersey, with a principal place of business at 7708 18th Avenue, Brooklyn, New York 11214.  BrainyTrade may be served via its registered agent for service of process: Kin Chau, 18 Bucknell Dr., East Brunswick, New Jersey 08816.

4.      Upon information and belief, AGPtek, Mambate and BrainyTrade are all related entities.  All three entities purport to have a place of business at 7708 18th Avenue, Brooklyn, New York 11214.  Upon information and belief, the following is a true and correct image of the storefront at 7708 18th Avenue, Brooklyn, New York 11214:



https://www.google.com/maps/@40.611943,-73.997445,3a,75y,306.04h,86.62t/data=!3m4!1e1!3m2!1s5myDOWMuuJelOIMu46AWvw!2e0

## II.      JURISDICTION AND VENUE

5.      This is an action arising from Defendants' infringement of Spyderco's copyrights, trademarks, and trade dress rights, and from Defendants' misappropriation of Spyderco's business values and deceptive trade practices under the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105.

6.      This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

7.      The Court has supplemental jurisdiction over the claims herein which arise under state common law under 28 U.S.C. § 1367, because the state law claims are so related to the federal claims that they form part of the same case or controversy.

8.      Defendants have minimum contacts with this judicial district such that this forum is a fair and reasonable one for adjudication of the dispute.  Defendants acting alone or in consort with others have placed the Accused Products (defined below) in the stream of commerce, knowing the likely destination of the Accused Products, and their conduct and connections with the state of Colorado, are such that they should reasonably have anticipated being brought into court in Colorado.  Defendants have also transacted and at the time of the filing of this Complaint are currently transacting business within Colorado.  Further, Defendants have committed specific acts of copyright, trademark, and trade dress infringement complained of herein within the state of Colorado.  Further, Defendants' blatant copying and counterfeiting of the goods of a Colorado corporation should cause Defendants to reasonably anticipate being subject to jurisdiction in this District.  For these reasons, personal jurisdiction exists over

Defendants and venue over this action is proper in this Court under 28 U.S.C. §§ 1391(b) and (c).

### III.   GENERAL ALLEGATIONS

#### A.   Spyderco's Intellectual Property

9.   In 1978, Mr. Sal Glesser, Spyderco's founder, invented a unique sharpening system that Spyderco named the "Tri-Angle Sharpmaker."  The product was designed to primarily address the lack of a sharpening tool in the market that was easy to use, durable, and able to sharpen all types of various blades and cutting tools.  On January 2, 1979, Mr. Glesser filed a patent application to cover certain elements of the original Sharpmaker, including a base with two openings which have an angular orientation.  The openings were in the shape of a six-pointed star into which triangular sharpening elements were inserted.  The application further described the specific shape of the sharpening elements, as well as a cylindrical rod used as a hand guard.  The patent issued on November 4, 1980 as U.S. Patent No. 4,231,194 ("the '194 Patent").  A copy of the '194 Patent is attached hereto as Exhibit A.  Figure 1 of the '194 Patent shows a perspective view of the invention:



10.     The first Sharpmaker was sold as model 203 (the "203 Sharpmaker"), was comprised of an elongated base with two large circular openings with six angled projections positioned within the cavity and forming a 6-pointed star at the base of the cavity (as opposed to the 6-pointed star openings disclosed in the '194 Patent).  Those openings received elongated, triangular-shaped sharpening stones.  Two smaller holes received cylindrical safety rods.  The 203 Sharpmaker was discontinued at the end of 1998 and is shown in the below photograph:



11.     On January 19, 1998, Spyderco filed U.S. Design Patent Application No. 82,235, covering the design of a new model of the Tri-Angle Sharpmaker.  The application issued as Design Patent No. D406,038 ("the '038 Patent") on February 23, 1999, claiming coverage of the following product design:



A copy of the '038 Patent is attached hereto as Exhibit B.

12.     In May 1999, a new model of Spyderco's Tri-Angle Sharpmaker (the "204 Sharpmaker") was launched.  The 204 Sharpmaker is the current Sharpmaker model being sold today and is shown in the following picture:



13.     Over the past 37 years, the "Tri-Angle Sharpmaker" has become an icon in the blade industry which consumers associate with Spyderco.  From its very beginning, when it satisfied the need for a durable, versatile sharpening tool, the Tri-Angle Sharpmaker's name and distinctive features have set it apart from other sharpening tools and readily allowed consumers to identify it as originating with Spyderco.  During this time, the Tri-Angle Sharpmaker has had a tradition of superior product quality that is well-known and sought after by consumers.  The substantial time, creative effort and money Spyderco has put into developing its highly distinctive, original, and successful Tri-Angle Sharpmaker has resulted in substantial consumer recognition, trust, loyalty, and goodwill.  Spyderco's customers have rewarded this effort and expense by making the Tri-Angle Sharpmaker one of Spyderco's best selling products.

### 1.    "Tri-Angle Sharpmaker" Is A <u>Common Law Trademark</u>

14.    Spyderco has used the mark "Tri-Angle Sharpmaker" in commerce since October 8, 1978.  Through use of the mark as an indicator of source for the 203 and 204 Sharpmakers, the mark has become distinctive as applied to Spyderco's goods in commerce.  Accordingly, "Tri-Angle Sharpmaker" is a strong common law trademark owned exclusively by Spyderco.  On November 4, 2014, Spyderco filed U.S. Trademark Application No. Serial No. 86/443,819 for "TRI-ANGLE SHARPMAKER" to enhance its rights in the mark. That application is currently pending.

### 2.    The Sharpmaker Packaging Is Covered By <u>Common Law Trade Dress Rights</u>

15.    Consistently since July 2007, Spyderco has used the following design ("Sharpmaker Packaging") in connection with packaging for the 204 Sharpmaker:



Through such consistent use, the design has become an indicator of source for the 204 Sharpmakers.  Accordingly, Spyderco also owns strong common law trade dress rights in and to the Sharpmaker Packaging.  On January 6, 2015, Spyderco filed U.S. Trademark Application Serial No. 86/496,159 for the design of the 204 Sharpmaker's packaging to enhance its rights in the Sharpmaker Packaging trade dress.

### 3. Elements Of The 204 Sharpmaker Are Covered By Common Law Trade Dress Rights

16.    Since May 1999 when the 204 Sharpmaker was released, Spyderco has consistently used the following design for the product:



Spyderco possesses common law trade dress rights in the non-functional aspects of the product which are inherently distinctive and have become associated exclusively with Spyderco and thus possess a secondary meaning.  These trade dress rights cover, at a minimum, the shape of the four openings along the raised center portion of the 204 Sharpmaker, which are merely ornamental and the shape thereof is non-essential to the functionality of the 204 Sharpmaker. This is evidenced by the differently shaped openings displayed on the 203 Sharpmaker and described in the '194 Patent.  Spyderco's trade dress rights additionally cover the raised center portion of the 204 Sharpmaker, which is merely ornamental and non-essential to the functionality of the 204 Sharpmaker.  A third ornamental and non-essential element of the trade dress is the four flat portions of "wings." These unique and distinctive features set the Tri-Angle Sharpmaker

apart from other sharpening tools on the market and allow consumers to identify the Tri-Angle Sharpmaker as originating exclusively with Spyderco.

### 4.   Spyderco's 204 Sharpmaker Booklet Copyrights

17.   Since May 1999, Spyderco has included an instruction booklet (the "1999 Sharpmaker Booklet") with the 204 Sharpmaker.  Spyderco has filed an application for the registration of its copyright in the 1999 Sharpmaker Booklet, has paid the requisite fees, and has deposited the necessary copies of the Sharpmaker Booklet with the United States Copyright Office.  The United States Copyright Office has received all such materials, and has duly and properly issued Spyderco Copyright Reg. No. TX-801-2174.

18.   Beginning in 2009, Spyderco discontinued the use of the 1999 Sharpmaker Booklet and began including a new instruction booklet (the "2009 Sharpmaker Booklet") with the 204 Sharpmaker.  The 2009 Sharpmaker Booklet is a derivative of the 1999 Sharpmaker Booklet, and contains minor differences relating to disclaimer language, picture borders, the cover of the booklet, etc.  The instructional text and photographs of the 2009 Sharpmaker Booklet are very similar, if not identical to that of the 1999 Sharpmaker Booklet.  Spyderco has filed an application for the registration of its copyright in the 2009 Sharpmaker Booklet, has paid the requisite fees, and has deposited the necessary copies of the 2009 Sharpmaker Booklet with the United States Copyright Office.  The United States Copyright Office has received all such materials, and has duly and properly issued Spyderco Copyright Reg. No. TX-801-1771.

19.   The 1999 and 2009 Sharpmaker Booklets contain material wholly original to Spyderco that is copyrightable subject matter under 17 U.S.C. §§ 101 et seq.  Spyderco is the sole owner of all right, title and interest in and to the copyrights in the 1999 and 2009 Spyderco

Booklets as a whole, and each individual photograph therein. Copies of the 1999 and 2009 Sharpmaker Booklets are attached hereto as Exhibits C and D.

20.     Spyderco's trademark and trade dress rights related to the Tri-Angle Sharpmaker are collectively hereinafter referred to as the "Sharpmaker Marks." Spyderco's Sharpmaker Marks and copyright rights related to the Tri-Angle Sharpmaker are collectively hereinafter referred to as the "Sharpmaker Intellectual Property."

### B.    Mambate's Counterfeit Sharpmaker Products & Actions

21.     Spyderco recently became aware of counterfeit 204 Sharpmakers being sold on Alibaba, Amazon, Newegg, www.brainydeal.us, and www.rakuten.com ("Accused Products"). Copies of exemplary online merchant pages offering the Accused Product for sale are attached hereto as Exhibit E.

22.     While the Accused Products are marketed under the brand name AGPtek, further investigation revealed that the Accused Products were being sold by BrainyDeal using the address that is also the physical business location of Mambate's storefront. Accordingly, upon information and belief, the Accused Products all emanate from a single source—Mambate.

23.      Defendants sell the Accused Products as a kit containing what appears to be substantially the same materials as the Tri-Angle Sharpmaker kit sold by Spyderco: an instructional booklet, a plastic base, plastic base cover, two metal safety rods, two fine grit sharpening stones, and two medium grit sharpening stones:



24.     A side by side comparison of the Tri-Angle Sharpmaker and the Accused Product demonstrates that the Accused Product is a virtually identical knockoff of the Tri-Angle Sharpmaker.  The only visible differences are in the color of the medium grit stones and the absence of the word "Spyderco" and Spyderco's logo on the Accused Product.  In the photos below, the Tri-Angle Sharpmaker appears on the left and the Accused Product appears on the right:



25.     The Accused Products are sold in packaging using the same color configuration as the Tri-Angle Sharpmaker kit.  The Accused Product packaging additionally contains the phrase "Tri-Angle Sharpmaker" on the side of the box:



26.     The instructional booklet included with the Accused Products contains both text and instructional images ("Counterfeit Booklet").  The English text contained in the Counterfeit Booklet is identical to the text contained in the 2009 Sharpmaker Booklet (which is substantially identical to the 1999 Sharpmaker Booklet as described above), with the exception being that the word "Spyderco" has been removed.  Additionally, the layout and color schemes used in the Counterfeit Booklet are also virtually identical to the layout and color schemes used in the copyrighted 1999 and 2009 Sharpmaker Booklets.  Although the photographs in the counterfeit booklet are not identical, the orientation and position of hands in relation to the product shown in the Counterfeit Booklet and the copyrighted 1999 and 2009 Sharpmaker Booklets are identical.  For instance, a comparison of page 7 of the Counterfeit Booklet (right) and the 2009 Sharpmaker Booklet (left) demonstrates the similarity of the colors and images, as well as identical English text:



27.   Upon   information   and   belief,   Defendants   sell   the Accused Products through the same channels of trade and to the same consumers as Spyderco sells its 204 Tri-Angle Sharpmaker.

28.   Upon information and belief, instead of creating its own tool with its own unique design, Defendants deliberately copied the well-known designs, trademarks, trade dress, and used copyrights covering Spyderco's Tri-Angle Sharpmaker product to trade upon the goodwill Spyderco has established in the Sharpmaker Intellectual Property, as well as to divert revenues from Spyderco.   Defendants' rote copying of the Sharpmaker Intellectual Property not only erodes Spyderco's significant goodwill, but it also allows Defendants to unfairly benefit from

Spyderco's ingenuity, investments, and intellectual property and significant expenditure of time, effort, and money.  Defendants have thus not only infringed upon, but willfully infringed upon Spyderco's Sharpmaker Intellectual Property rights.

## IV.    FIRST CLAIM FOR RELIEF
### (Federal Trademark Infringement of Tri-Angle Sharpmaker Common Law Trademark Under §43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

29.    Spyderco incorporates paragraphs 1 through 28 as though fully set forth herein.

30.    Without Spyderco's consent, Defendants have used, in connection with the sale, offering for sale, distribution and advertising of its Accused Products, designs that infringe upon Spyderco's "Tri-Angle Sharpmaker" common law trademark rights.

31.    These acts of trademark infringement have been committed with the intent to cause confusion, mistake, or deception, and are in violation of 15 U.S.C. § 1125(a).

32.    As a direct and proximate result of Defendants' infringing activities, Spyderco is entitled to recover Defendants' unlawful profits and Spyderco's substantial damages under 15 U.S.C. § 1117(a).

33.    Defendants' infringement of Spyderco's "Tri-Angle Sharpmaker" common law trademark rights is exceptional and intentional, entitling Spyderco to treble the amount of its damages and to Defendants' profits, and to an award of attorneys' fees under 15 U.S.C. § 1117(a).

34.    Spyderco is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

## V.    SECOND CLAIM FOR RELIEF
### (Federal Trade Dress Infringement of Sharpmaker Packaging Common Law Trade Dress Rights Under §43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

35.    Spyderco incorporates paragraphs 1 through 34 as though fully set forth herein.

36.     Without Spyderco's consent, Defendants have used, in connection with the sale, offering for sale, distribution and advertising of its Accused Products, designs that infringe upon Spyderco's Sharpmaker Packaging common law trade dress rights.

37.     These acts of trade dress infringement have been committed with the intent to cause confusion, mistake, or deception, and are in violation of 15 U.S.C. § 1125(a).

38.     As a direct and proximate result of Defendants' infringing activities, Spyderco is entitled to recover Defendants' unlawful profits and Spyderco's substantial damages under 15 U.S.C. § 1117(a).

39.     Defendants' infringement of Spyderco's Sharpmaker Packaging common law trade dress rights is exceptional and intentional, entitling Spyderco to treble the amount of its damages and to Defendants' profits, and to an award of attorneys' fees under 15 U.S.C. § 1117(a).

40.     Spyderco is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

## VI.     THIRD CLAIM FOR RELIEF
### (Federal Trade Dress Infringement of Sharpmaker Common Law Trade Dress Under §43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

41.     Spyderco incorporates paragraphs 1 through 40 as though fully set forth herein.

42.     Without Spyderco's consent, Defendants have used, in connection with the sale, offering for sale, distribution and advertising of its Accused Products, designs that infringe upon Spyderco's common law trade dress covering the 204 Sharpmaker.

43.     These acts of trade dress infringement have been committed with the intent to cause confusion, mistake, or deception, and are in violation of 15 U.S.C. § 1125(a).

44. As a direct and proximate result of Defendants' infringing activities, Spyderco is entitled to recover Defendants' unlawful profits and Spyderco's substantial damages under 15 U.S.C. § 1117(a).

45. Defendants' infringement of Spyderco's common law 204 Sharpmaker trade dress rights is exceptional and intentional, entitling Spyderco to treble the amount of its damages and to Defendants' profits, and to an award of attorneys' fees under 15 U.S.C. § 1117(a).

46. Spyderco is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

## VII. FOURTH CLAIM FOR RELIEF
### (Federal Copyright Infringement Under 17 U.S.C. § 101 et seq.)

47. Spyderco incorporates paragraphs 1 through 46 as though fully set forth herein.

48. Plaintiff is the sole and exclusive owner of the entire right, title and interest in and to the copyrighted 1999 and 2009 Sharpmaker Booklets. Defendants are not authorized to reproduce, distribute, make derivative works, or make any other use of these copyrighted materials in any manner whatsoever.

49. Defendants' acts complained of herein constitute a violation of Spyderco's exclusive rights (pursuant to 17 U.S.C. §106) in the copyrighted works.

50. Defendants' acts thus constitute infringement, in violation of the Copyright Act, 17 U.S.C. §§ 101, 106, 501, *et seq.*

51. Defendants' infringement was and continues to be willful. Furthermore, Defendants' willful infringement is for purposes of commercial advantage or private financial gain.

52. Spyderco has suffered, and unless Defendants are enjoined, will continue to suffer, damages and harm for which there is no adequate remedy at law.

53.    Spyderco is therefore entitled to injunctive relief, impoundment and disposition of any infringing materials, an award of its actual damages and any additional profits of Defendants, and an award of attorneys' fees and costs pursuant to 17 U.S.C. §§ 505.

## VIII.   FIFTH CLAIM FOR RELIEF
### (Deceptive Trade Practices Under the
### Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105)

54.    Spyderco incorporates paragraphs 1 through 53 as though fully set forth herein.

55.    As described above, Defendants are using the Sharpmaker Marks to market and sell its competing products without authorization from Spyderco.  In doing so, Defendants are disparaging the goods, services, property, or business of Spyderco by false or misleading representation of fact.

56.    Defendants are knowingly making a false representation as to the source, sponsorship, approval or certification of goods, services, or property through their unauthorized use of the Sharpmaker Marks in connection with said goods, services, or property.  Further, Defendants are knowingly making a false representation as to affiliation, connection, or association with or certification by Spyderco through its unauthorized use of the Sharpmaker Marks.

57.    Defendants' unauthorized use of the Sharpmaker Marks falsely signals to the general public that Spyderco has approved the goods and services offered by Defendants under the trademarks, which it has not.

58.    Such acts occur in the course of Defendants' business and constitute deceptive trade practices in violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105.

59.     Defendants' deceptive trade practices have had and will continue to have a significant negative impact on the public as actual and potential consumers of Spyderco goods and services, who are likely to be confused or deceived by Defendants' unauthorized use of the Sharpmaker Marks.

60.     Defendants have engaged in unlawful and unfair business practices that have harmed and will continue to harm the goodwill associated with the Sharpmaker Marks and Spyderco's business, reputation, and goodwill.

61.     Spyderco has been, and will continue to be, damaged by Defendants' deceptive trade practices in an amount to be determined at trial, as recoverable under Colo. Rev. Stat. § 6-1-113.

62.     Defendants' acts in violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105 have, directly and indirectly, caused, and unless enjoined will continue to cause, irreparable harm to Spyderco and the goodwill and reputation associated with the Sharpmaker Marks, for which Spyderco has no adequate remedy at law.  Thus, Spyderco is entitled to injunctive and other relief.

63.     Pursuant to Colo. Rev. Stat. § 6-1-113, Spyderco is entitled to an award of attorneys' fees and costs.

64.     On information and belief, Defendants' conduct was intentional, in bad faith and without foundation in law, and pursuant to Colo. Rev. Stat. § 6-1-113, Spyderco is thus entitled to treble damages.

## IX.     SIXTH CLAIM FOR RELIEF
### (Misappropriation of Business Value)

65.     Spyderco incorporates paragraphs 1 through 64 as though fully set forth herein.

19

66.     Spyderco has expended significant resources, including skill, time, effort, and money, in acquiring and developing the Sharpmaker Marks described above and the goodwill associated therewith.

67.     Spyderco has acquired substantial business values in the Sharpmaker Marks and the Sharpmaker Marks are a protectable business value of Spyderco.

68.     Through its blatant copying of the Sharpmaker Marks, Defendants have wrongfully appropriated the skill, time, effort, and money that Spyderco has invested in its Sharpmaker Marks and the goodwill associated therewith.

69.     As a result of Defendants' wrongful conduct, Spyderco has suffered significant injury.

70.     As a direct result of Defendants' actions, Spyderco has been and will continue to be irreparably injured because it no longer has complete control of its reputation and the goodwill that has been painstakingly developed in the Sharpmaker Marks.  Spyderco will be forced to correct confusion in the marketplace resulting from Defendants' copying of the same Sharpmaker Marks.  Spyderco is entitled to injunctive relief to prevent Defendants' continued copying of the Sharpmaker Marks.  Unless Defendants are enjoined from continuing their infringing conduct, Spyderco will suffer harm for which there is no adequate remedy at law.

71.     Defendants' copying of the Sharpmaker Marks is causing Spyderco damages in amounts to be proven at trial.

## X.     PRAYER FOR RELIEF

WHEREFORE, Spyderco prays that the Court enter an Order for Judgment as follows:

A.     That Defendants have infringed the asserted trademarks, trade dress, and copyrights;

B.      That Defendants, and its respective agents, servants, officers, directors, employees and all persons acting in concert with it, directly or indirectly, be permanently enjoined from infringing, inducing others to infringe, or contributing to the infringement of the asserted trademarks, trade dress, and copyrights;

C.     That Defendants, and its respective agents, servants, officers, directors, employees and all persons acting in concert with it, directly or indirectly, be ordered to deliver up to Spyderco for destruction, or certify destruction of, all products that infringe the asserted trademarks, trade dress, and copyrights;

D.     That Defendants, and its respective agents, servants, officers, directors, employees and all persons acting in concert with it, directly or indirectly, be ordered to deliver up to Spyderco any and all tools, molds, stamps and/or embossing plates, drawings, technical drawings, and forms used in the creation of the Accused Products;

E.     That Defendants account for and pay to Spyderco damages adequate to compensate Spyderco for Defendants' conduct, in an amount to be proven at trial, together with interest and costs as fixed by the Court;

F.     That Defendants pay to Spyderco statutory damages to the full extent permitted by law;

G.      That Spyderco be awarded its costs and attorneys' fees in accordance with 15 U.S.C. § 1117(a), 17 U.S.C. § 505, and Colo. Rev. Stat. § 6-1-113 and any other appropriate statute as on the Court's own power;

H.      That Spyderco be awarded pre-judgment and post-judgment interest; and

I.      That the Court award such other and further preliminary and permanent relief to Spyderco as the Court deems equitable and appropriate.

## JURY DEMAND

Spyderco hereby demands a jury trial on issues so triable.

Respectfully submitted,

Dated: May 4, 2015                    By: s/ Robert R. Brunelli
                                          Robert R. Brunelli
                                              rbrunelli@sheridanross.com
                                          George T. Scott
                                              jscott@sheridanross.com
                                          SHERIDAN ROSS P.C.
                                          1560 Broadway, Suite 1200
                                          Denver, CO 80202
                                          (303) 863-9700
                                          litigation@sheridanross.com

                                          ATTORNEYS FOR PLAINTIFF